**Chrisp HEARD, Jr., Petitioner,**

v.

**UNITED STATES of America,
Respondent.**

**Civ. A. No. 200-66.**

United States District Court
District of Columbia.

Jan. 31, 1967.

William H. Allen and Peter J. Nickles, Washington, D. C., for petitioner.

David G. Bress, U. S. Atty., Oscar Altshuler and Judith Ann Wilson, Asst. U. S. Attys., Washington, D. C., for respondent.

## OPINION

CURRAN, Chief Judge.

Petitioner was convicted after trial by a jury on nine counts of narcotics violations and was sentenced by this Court to the mandatory minimum of ten years for a second offender with the recommendation that he be committed to the United States Public Health Service Hospital in Lexington, Kentucky. His conviction was affirmed by a panel of the United States Court of Appeals.[1] That Court subsequently issued an order denying Petitioner's petition for rehearing *en banc*.[2] A petition for habeas corpus was dismissed without hearing on October 8, 1965, and petitioner was denied leave to appeal without prepayment of costs on October 14, 1965. On December 9, 1965, the Court of Appeals likewise denied petitioner leave to appeal *in forma pauperis*.

The matter now at hand arose on January 26, 1966, when petitioner filed a *pro se* motion for vacation of sentence under 28 U.S.C. § 2255. Petitioner's motion made the single allegation that he had been deprived of his constitutional right to effective assistance of counsel with particular reference to the trial presentation of the insanity defense. After consideration of the motion and the files and records of the case, this Court denied the motion on May 16, 1966, without a hearing. On July 16, 1966, the Court of Appeals issued an order granting petitioner leave to appeal *in forma pauperis* and appointing counsel to prosecute the appeal on his behalf. Thereafter that court issued a further order, dated September 1, 1966, remanding the matter to this court to permit amendment of petitioner's § 2255 motion.

On remand, petitioner has reasserted the issue of ineffective assistance of trial counsel in the preparation of the insanity defense. Also, through appointed counsel, petitioner has raised for the first time the question of his right to a competency hearing at or during trial, despite the absence of any request therefor by petitioner or his trial counsel at the proper time.

▆ Petitioner's present allegation of ineffective assistance of trial counsel in the preparation of the insanity defense is successive in the sense that the issue has been heard and determined previously. It is unquestionable that under Sanders v. United States[3] no controlling weight may be given to the denial of petitioner's prior application for federal habeas corpus[4] because, although that collateral attack on petitioner's conviction raised the same ground presented here, the prior determination was not made on the merits, that is, the Court held no hearing.[5] However, it is equally clear that the ineffective assistance claim was finally determined adversely to petitioner on direct appeal from the original conviction. Although the issue was seemingly not raised by counsel on appeal, it was injected into the proceeding by the "Statement of Chief Judge Bazelon Why He Believes the Petition for Rehearing En Banc Should be Granted."[6] This statement stimulated the majority of the original panel to consider the issue directly. On May 14, 1965, Circuit Judge Burger filed an "Order Amending Majority Opinion filed Decem-

---

1. Heard v. United States, 121 U.S.App. D.C. 37, 348 F.2d 43 (1964).

2. Ibid, p. 42, 348 F.2d p. 49.

3. Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963).

4. Habeas Corpus No. 424–65, denied October 8, 1965.

5. Sanders v. United States, supra, p. 15, 83 S.Ct. p. 1077.

6. The petition for rehearing *en banc* was denied.

ber 17, 1964". Footnote 7 of the official opinion of the Court of Appeals now states in pertinent part:

> "The majority of this court do not, however, share Judge Bazelon's view that trial counsel's performance was deficient." [7]

Judge Wright's dissent in Thornton v. United States [8] cogently expresses the basis for the application of the *Sanders* criteria to the instant case in light of the prior determination on direct appeal of the ineffective assistance question.

> "There appears to be no reason in principle to distinguish between the finality effect of determinations of grounds made *at trial* or *on appeal* and determinations made on earlier § 2255 applications, or to give less significance to abuse of federal process generally than is given to abuse of the § 2255 remedy." [9] *(*Emphasis added)

So, applying the *Sanders* [10] criteria, this Court holds that (1) the ground of ineffective assistance of trial counsel was determined adversely to petitioner on direct appeal, (2) that prior determination was made after consideration on the merits, and (3) the ends of justice would be frustrated rather than served if accused persons presently awaiting original court action in their criminal cases were delayed from the exercise of their right to a speedy trial by the senseless relitigation of an already determined issue. Petitioner's motion to vacate and set aside sentence on the grounds of ineffective assistance of trial counsel is denied.

## II.

■■ Appointed counsel, in the diligent discharge of his duty to petitioner, raised, by means of amendment of the earlier *pro se* motion, a new issue which has not been determined directly on appeal, nor in any previous collateral attack on the original conviction. However, this issue questions the exercise by the trial court of its discretion, which means the movant carries the burden of proffering substantial evidence to show an abuse of judicial discretion. The amended motion claims that, in view of petitioner's "recognized addiction to narcotics and other indications of mental aberration appearing in the records of St. Elizabeth's Hospital", he had a right to an independent judgment by the trial court on the issue of his competence to stand trial, irrespective of the absence of any request for a hearing by petitioner or trial counsel. In other words, petitioner asserts that it was the duty of the trial court, *sua sponte,* to order a competency hearing when the hospital certification of petitioner was "conclusionary". Further, petitioner claims that a *nunc pro tunc* hearing held some three and one-half years after trial would be insufficient to protect his constitutional right to a fair trial because of the compelling need for concurrent determination as a practical matter. The authorities clearly hold that a *nunc pro tunc* hearing in these circumstances would be inadequate.[11] So the alternative courses of determination on the instant motion as to petitioner's right to a competency hearing at or during trial are the denial of the motion on the files and records of the original case, or the granting of a new trial. This court, after consideration of the facts and circumstances called to the trial court's attention or within the reasonable scope of his judicial observation, finds it appropriate to deny petitioner's motion.

■ The fact that neither the petitioner nor the Government objected at trial to the court's acceptance of the

---

7. Heard v. United States, supra, 121 U.S. App.D.C. p. 40, 348 F.2d p. 46.

8. Thornton v. United States, 125 U.S.App. D.C. ——, 368 F.2d 822. Decided October 6, 1966, dissent of Judge Wright.

9. Thornton v. United States, supra, dissent p. 833.

10. Sanders v. United States, supra, 373 U.S. p. 15, 83 S.Ct. p. 1077.

11. Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960); Pate v. Robinson, 383 U.S. 375, 386, 387, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Hansford v. United States, 124 U.S.App.D.C. 387, 365 F.2d 920, 930–931.

hospital certification of competency without holding a hearing stands uncontradicted. While this fact cannot be viewed as a waiver by petitioner of his rights,[12] it does, under the District of Columbia Code [13] as interpreted by the Court of Appeals for the District of Columbia Circuit sitting *en banc* [14] authorize the trial court in its discretion to proceed with the trial without a competency hearing. It is interesting to note that the Court of Appeals found no abuse of discretion in *Whalem,* despite the evidence of a prior commitment to a mental institution.[15] There was no evidence of such prior history in the instant case. In sum, the *Whalem* decision expressly authorizes the trial court to exercise its discretion as to the holding of a competency hearing in the absence of objection by the parties to the hospital certification. This court in the *Heard* trial exercised its discretion.

Subsequent to the *Whalem* decision, the Supreme Court handed down its ruling in Pate v. Robinson,[16] an Illinois state case involving collateral actions brought in the federal courts of the Seventh Circuit. Relying upon *Pate,* petitioner has suggested that the *en banc* decision of Whalem in this circuit no longer carries controlling weight. This court rejects that suggestion. The Supreme Court expressly noted in the *Pate* opinion that it granted certiorari "to resolve the difficult questions of state-federal relations posed by (such) rulings". In the instant case no such difficult questions of state-federal relations are posed, but rather the interpretation of a statute passed by the United States Congress is involved.[17] More importantly, the *Whalem* and *Pate*

cases are not inconsistent in substance. The Supreme Court held that "the *evidence introduced on Robinson's behalf* entitled him to a hearing on this issue (competency)".[18] The Court of Appeals found in *Whalem* that "(N)othing *in the record of this case* could warrant our holding that the trial court judge abused his discretion by proceeding to trial without a competency hearing." [19] The case at hand is factually quite distinct from the *Pate* case. Four witnesses expressed the opinion that Robinson was insane, whereas no witness so testified as to petitioner, Heard. Robinson had previously been committed to a mental institution but petitioner had not. Robinson in the past had murdered his infant child and attempted suicide, whereas there was no such compelling evidence of prior mental aberration on the part of petitioner introduced at or during trial. Finally, the prosecutor of Robinson demonstrated his own doubt of the defendant's competency by suggesting that the court hear from a Dr. Haines. The transcript of trial proceedings in the present case is devoid of expressions of doubt as to competency by any of the parties.

 In the final analysis, petitioner's reliance rests exclusively on the bare fact of his recognized addiction to narcotics over a long period of years and certain nebulous allegations that his behavior at trial evidenced incompetency. The burden weighs upon petitioner to present sufficient evidence of mental incompetency to raise a *bona fide* doubt requiring the trial judge *sua sponte* to order a hearing. The legal standard of competency has been succinctly stated

---

12. Taylor v. United States, 282 F.2d 16, 23 (C.A.8th Cir. 1960).

13. D.C.Code, Title 24, Sec. 301(a) and (b).

14. Whalem v. United States, 120 U.S.App. D.C. 331, 334, 346 F.2d 812, 815 (1965).

15. Ibid, p. 333, 346 F.2d p. 814.

16. 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

17. D.C.Code, Title 24, Section 301(a) and (b).

18. Pate v. Robinson, supra, p. 385, 86 S.Ct. p. 842.

19. Whalem v. United States, supra, 120 U.S.App.D.C. p. 336, 346 F.2d p. 817.

by the Supreme Court in Dusky v. United States,[20]

> "test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him."

At trial, petitioner submitted to his attorney, and subsequently to the judge, a list of doctors whom he desired to subpoena. This action demonstrated a reasonable degree of rational understanding both as to the proceedings against him and as to the tactical presentation of an insanity defense.

■ Petitioner's motion attaches great importance to the accusation made by him in open court outside the presence of the jury that his trial counsel "was telling the jury I was guilty to this charge contrary to my wishes."[21] At first blush this outburst might appear to evidence a lack of understanding of the proceedings tantamount to incompetency. However, closer scrutiny of the context in which this accusation was made reflects merely a natural confusion created by the defense burden of presenting a factual defense and an insanity defense simultaneously, that is, at the same trial. Such confusion has disturbed most laymen, many doctors, some lawyers and even some jurists to such an extent that the process of bifurcation of trials involving the insanity issue has been seriously proposed in legal and judicial circles. At any rate such confusion does not constitute evidence of mental incompetency. In phrasing indispensable hypothetical questions asked of Dr. Platkin, defense counsel necessarily presumed certain facts for purposes of the questions only. To any layman these questions might reasonably appear to contain admissions against interest. Petitioner's reaction was neither unnatural nor irrational.

■ Finally, petitioner relies on his recognized addiction to narcotics as sufficient evidence of mental incompetency to raise a *bona fide* doubt requiring a hearing to be ordered *sua sponte*. The issue here relates primarily to the period after the trial begins—questionable actions of defendant during trial. The cases cited by petitioner on this point are factually distinguishable from our case. In Pouncey v. United States,[22] the defendant accused his counsel of being "in cahoots with the Government * * *". Petitioner similarly expressed his disenchantment with trial counsel, albeit in less bizarre terms. However, the subsequent inconsistent act of Pouncy of telling his lawyer in the presence of the jury to plead him guilty constituted a "warning of incompetence" in the eyes of the Court of Appeals. Petitioner here made no such inconsistent utterances and no warning of incompetence arose.

In *Hansford*[23] the defendant's possible withdrawal symptoms during trial were within the scope of the trial court's knowledge and observation, since the defendant had admitted the use of narcotics throughout the trial and had immediately thereafter been incarcerated by order of the trial judge. In his order to the jail, the trial judge stated that Hansford might be subject to withdrawal symptoms. The *Hansford* case is inapposite to petitioner's situation because petitioner offered no specific evidence of his own use of narcotics immediately before or during trial and no evidence of subsequent deprivation which might have caused withdrawal symptoms. Also, there is no evidence of petitioner's manifestation at trial of any of the familiar physical signs of withdrawal except the previously discussed "strange behavior".

This court holds that insufficient evidence of mental incompetency existed at

20. 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

21. Transcript of Trial Proceedings, p. 90.

22. 121 U.S.App.D.C. 264, 266, 349 F.2d 699, 701 (1965).

23. Hansford v. United States, supra.

trial to raise a *bona fide* doubt requiring the trial court judge *sua sponte* to order a hearing. Petitioner's amended motion to vacate and set aside sentence is hereby denied.