**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Francis Lee JONES, Defendant-Appellant.**

**No. 27027.**

United States Court of Appeals Fifth Circuit.

Aug. 20, 1969.

Certiorari Denied Nov. 24, 1969. See 90 S.Ct. 390.

O. W. Sternberg, Lyman M. Niemeier, Waco, Tex. (Ct.Apptd.), for appellant.

Ted Butler, U. S. Atty., Wayne F. Speck, Asst. U. S. Atty., Western District of Texas, for appellee.

Before AINSWORTH and GODBOLD, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge:

In this bank robbery case, brought under 18 U.S.C. § 2113, appellant was tried before a jury and found guilty on all four counts of the indictment. The first count charged him with taking approximately $25,000 in money from the bank; the second, with taking and carrying away the money, with intent to steal; the third, with receiving and possessing the money, and the fourth, with putting in jeopardy, by use of a pistol, the lives of the bank employees.

After the jury returned its verdict, the Court deferred sentence on Counts One, Two, and Three, and imposed a twenty-year sentence only upon Count Four. Hence, we are not concerned with any possible duplicity in Counts One, Two, and Three, which, indeed, have not been raised as points for consideration on this appeal.

Appellant's first contention, that the District Court committed plain error, in failing, on its own motion, to have appellant examined pursuant to 18 U.S.C. § 4244, as to his mental condition, clearly is without merit. As a factual basis for this contention, appellant points to excerpts from the trial transcript set forth in the margin,[1]

1. At about the middle of the second day of this two-day trial, and after appellant had been examined and cross examined, the following colloquy took place between appellant and his attorney, on redirect examination:

Q Francis, were you ever in the Service?

A Yes, sir.

Q What branch of the Service?

A The Navy.

where appellant, for the first time, revealed that about sixteen years prior to the time the crime allegedly took place, he had been discharged from the Navy for mental reasons.

We need mention only our primary reasons for holding that the trial court did not err. We are particularly impressed that the trial judge, after observing the rather lengthy testimony of appellant, his obvious ability to articulate intelligently, as well as the pertinent testimony of the other witnesses, clearly felt that no real question as to appellant's mental condition existed, either at trial, or when the crime was committed. After carefully considering the record as a whole, we conclude that it sustains the trial court's action as entirely proper under the circumstances presented.[2]

■ Appellant also contends that in his closing remarks to the jury, the Government's attorney committed reversible error by using the language set forth in the margin.[3] Considering the innocuous nature of these remarks and that appellant's counsel made no

Q When was that?
A 1952.

    *     *     *     *     *

Q How long were you in the Service?
A Just a short while.
Q What is the reason for your discharge?

    *     *     *     *     *

Q Tell us the reason for your discharge, please.
A I messed up.
Q Don't you have a medical discharge, Francis?
A *I think so, yes sir.*

    *     *     *     *     *

[As noted, all of this occurred some sixteen years before the crime and trial which resulted in conviction. Moreover, one of appellant's witnesses, Mrs. Betty Kelly, in effect testified that he —appellant—had implied in conversations with her that he had deliberately misled Navy psychiatrists in order to secure a medical discharge. Tr. 383–384.]

Q You know so, don't you, Francis?
A Yes, sir.
Q What is it for? What is the reason for it?
A For being crazy.
Q Are you subject to epileptic fits?
A Yes, sir.
Q Are you subject to amnesia, blackouts, and that is all put on your discharge, isn't it?
A Yes, sir.

    *     *     *     *     *

On re-cross examination, the following colloquy transpired:

Q *You are not pleading "Not Guilty" by reason of insanity?*
A As a matter of fact, there was no one knew anything about this in this courtroom until awhile ago, probably after my mother maybe told my attorney. He came straight to me. He didn't even know that I had been in the Service. I didn't tell him that, because I didn't want this stuff brought out. *I don't think I am crazy.* I know what people tell me, the crazy things I do, that I don't know anything about. That's all I can say. I didn't bring none of this stuff up. The Government, or my attorney or whoever is responsible, brought up about fifteen or twenty minutes ago. During our recess, when we come back in from the recess, it was brought to me, "Why didn't you tell me about this?"

    *     *     *     *     *

(Emphasis added.)

2. As to the matter of when a trial court, *on its own motion*, must require an examination of a defendant as to his mental condition, see Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); Hansford v. United States, 124 U.S.App. D.C. 387, 365 F.2d 920 (1966); Harper v. United States, 122 U.S.App.D.C. 23, 350 F.2d 1000 (1965); Howell v. United States, 282 F.Supp. 246 (N.D.Ill.1968); Bell v. United States, 265 F.Supp. 311 (N.D.Miss.1966) aff'd 375 F.2d 763 (5 Cir. 1967).

3. The portion appellant objects to is italicized below:

"Ladies and Gentlemen, *we are in the last throes of a political campaign* in these United States in our quadrennial revolution that we Americans go through. The overriding issue in this campaign has not been poverty; it has not been Vietnam; it has not been bombing pauses. *The overriding issue in this campaign has been law and order. The overriding issue in this campaign has been crime in these United States, and I, for one, am here to tell you that we are not doing enough about it.*" (Emphasis added).

 

objection to them at trial, we hold that, unquestionably, no plain, reversible error was committed.[4]

Accordingly, the judgment below is Affirmed.

---

4. *Cf.* Rule 52(a), F.R.Crim.P.; See United States v. Kravitz, 281 F.2d 581 (3rd Cir. 1960); Jenkins v. United States, 251 F.2d 51 (5th Cir. 1968).